# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ROBERT LARUE, | ) | |
| | ) | |
| Claimant-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. N15A-07-003 PRW |
| | ) | |
| EVRAZ CLAYMONT STEEL, | ) | |
| | ) | |
| Employer-Appellee. | ) | |
| | ) | |

Submitted: January 27, 2016
Decided: February 10, 2016

*Upon Appeal from the Decision of the Industrial Accident Board.*
**AFFIRMED.**

## OPINION AND ORDER

Michael P. Freebery, Esquire, The Law Firm of Michael P. Freebery, P.A., Rehoboth Beach, Delaware, Attorney for Employee-Appellant Robert LaRue.

Anthony M. Frabizzio, Esquire and Gregory P. Skolnik, Esquire, Heckler & Frabizzio, P.A., Wilmington, Delaware, Attorney for Employer-Appellee Evraz Claymont Steel.

**WALLACE, J.**

## I.    INTRODUCTION

Robert LaRue appeals a June 2015 decision of the Industrial Accident Board (the "Board").[1]   In that order, the Board reduced a previous award of attorney's fees that arose from its approval of LaRue's Petition for Additional Compensation Due against Evraz Claymont Steel ("Claymont Steel").   LaRue now claims the Board failed to conduct a proper analysis of salient factors and used an incorrect basis for its revised award.   Claymont Steel says LaRue is precluded from arguing that the Board improperly analyzed the required legal factors, but even if not, the Board did conduct a proper analysis.   And, according to Claymont Steel, the Board awarded attorney's fees on the proper amount—only the medical bills sought in LaRue's petition.

Because the Board properly considered the appropriate factors, awarded attorney's fees on the appropriate amount, and did not abuse its discretion, its decision revising LaRue's attorney's fees award is hereby **AFFIRMED**.

---

[1]    *LaRue v. Claymont Steel*, IAB Hrg. No. 1310899, at 1-2 (June 15, 2015), Ex. 2 to Appellant's Opening Br. [hereinafter "June Decision"].

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The 2007 Steel Mill Accident

Robert LaRue was injured on July 16, 2007, in an explosion at a steel mill owned and operated by Claymont Steel. He suffered severe second- and third-degree burns over most of his body and bilateral knee injuries; he injured his knees when molten steel caused his clothing to ignite and catch fire, forcing him to jump from an elevated platform. In 2008, Claymont Steel recognized LaRue's scarring; in 2009, it recognized a 7.5% impairment to LaRue's skin; and in 2010, it recognized a 16% impairment in LaRue's left leg and a 5% impairment in his right.

LaRue filed his first petition with the Board in September 2009. He sought to recognize his back as an additional body part injury related to the accident. LaRue withdrew this petition without prejudice because almost all of his medical bills relating to his back were paid by the Claymont Steel's insurance carrier, AIG/Chartis.

LaRue had returned to work in July 2009 and performed a light duty position until the end of 2013; that's when the steel plant closed and he was terminated.

In March 2014, LaRue visited Dr. Selina Xing for back treatment. This time, Claymont Steel refused to pay for LaRue's treatment, and so he immediately filed a Petition for Additional Compensation Due.

**B. The January 2015 Grant of Attorney's Fees**

The Board heard LaRue's Petition for Additional Compensation Due a few months later. In his petition, LaRue asked the Board to recognize that his back injury was causally related to the work accident and to award him payment of outstanding related medical expenses. The Board granted the petition in its entirety on January 12, 2015 ("January Decision"), finding that: (1) LaRue's back injury was exacerbated by the physical therapy for his work-related bilateral knee problems, and so his back injury was related to the work injury;[2] (2) because the back injury was causally related to the work accident, Claymont Steel was responsible for the medical bills from Dr. Xing;[3] (3) LaRue was entitled to medical expert witnesses' testimony fees under 19 *Del. C.* § 2322(e);[4] and (4) LaRue was entitled to payment of a "reasonable attorney's fee" pursuant to 19 *Del. C.* § 2320(10)(a), which the Board computed to be "the lesser of $9,400 or thirty percent of the value of

---

[2] *LaRue v. Claymont Steel*, IAB Hrg. No. 1310899, at 22 (Jan. 12, 2015), Ex. 1 to Appellant's Opening Br. [hereinafter "January Decision"].

[3] *Id.*

[4] *Id.* at 25.

the award."[5] The Board specified neither the amount Claymont Steel was required to pay LaRue for Dr. Xing's medical bills, nor the amount the award of attorney's fees was to be based upon.

In considering the award of attorney's fees, the Board cited 19 *Del. C.* § 2320(10)(a):

> A reasonable attorneys' fee in an amount not to exceed 30 percent of the award or 10 times the average weekly wage in Delaware as announced by the Secretary of Labor at the time of the award, whichever is smaller, shall be allowed by the Board to any employee awarded compensation under Part II of this title and taxed as costs against a party.[6]

Using the weekly wage at the time, the Board determined the maximum award was $9,983.50. While it did not nominate or discuss each individually, the Board considered the factors set forth in *General Motors Corp. v. Cox.*[7] It did so referencing LaRue's counsel's affidavit—which addressed each *Cox* factor—to make its determination.[8] Based on the notion

---

[5]     *Id.* at 25-26.

[6]     DEL. CODE ANN. tit. 19, § 2320(10)(a) (2014).

[7]     304 A.2d 55 (Del. 1973).

[8]     As to the first factor, counsel responded that it took "average" time and labor. He responded "N/A" to factors two and five. For the third factor, he remarked the fees customarily charged were "⅓ of Benefits Obtained with Fee Offset." As to the fourth factor, the amount involved, he wrote "[o]ver $10k in medical bills" and "[c]ausation of back." For the sixth factor, he stated that "[l]egal representation began March 12, 2008" and that he spent "[a]pprox 30 hours" on the petition. As to his experience, the seventh

-5-

that the Board can award a fee lower than the maximum as long as it considers the *Cox* factors, the Board found the following:

> Claimant's counsel submitted an Affidavit and a copy of the retention agreement to enable the Board to consider the necessary *Cox* factors. Claimant's counsel spent approximately 30 hours preparing for the hearing. The hearing lasted approximately three hours and fifteen minutes. Determining the dollar amount of the award was not for the Board to decide. The Board presumes that the parties are aware of the dollar amount of the award at issue. Therefore, after such consideration, the Board awards an attorney's fee to be paid by Employer that is equal to **the lesser of** $9,400 or thirty percent of the value of the award.[9]

LaRue's counsel then sent Claymont Steel's counsel a letter demanding $9,400 in attorney's fees. He based this request on: (1) the Board's finding "that the claimant's low back injury is related to the work accident"; (2) the Board's ruling that "the carrier's payment of the medical bills helped to establish causation"; (3) his filing reflecting $13,173.00 in

---

factor, he stated he was a "[v]ery experienced work comp attorney" and had been a member of the Delaware bar since 1989. For the eighth factor, he wrote the fee was a "[c]ontingent fee based upon 1/3 of benefits obtained with fee offset." As to the ninth factor, he stated Claymont Steel could pay and as to the tenth, fees would not be received from any other source. *See* Aff. for Attorney's Fee, Ex. A to Appellee's Reply Br.

[9]     January Decision at 26 (emphasis included).

medical expenses with payments totaling $10,072.10; and (4) the Board's finding that "the medical care rendered by Dr. Xing was . . . appropriate."[10]

## C. The June 2015 Revision of the Attorney's Fees Award

Claymont Steel filed a timely Motion for Reargument asking that the award of attorney's fees be reduced. Claymont Steel argued that it should be responsible for only $617.87 in attorney's fees, *i.e.*, thirty percent of the total outstanding medical expenses (or $2,095.58 consisting of a $1,710.74 bill for Dr. Xing's treatment and $348.48 in prescriptions).[11] LaRue said he was entitled to an attorney's fee of $9,400. According to him, the Board's award included the $13,000 in previously submitted, uncontested, and paid medical bills plus the then-outstanding medical expenses. His rationale: the Board's decision acknowledged that all lower back bills were casually related to the work injury.[12]

On reargument, the Board wrote "that at the time it rendered its original award of an attorney's fee, it was not aware of the amount of the outstanding medical bills at issue."[13] It stated that in the January Decision, it

---

[10]     *See* Demand Letter, Ex. B to Appellee's Reply Br. (emphasis included).

[11]     June Decision at 1-2.

[12]     *Id.* at 2.

[13]     *Id.* at 3.

correctly did not take the monetary aspect of the award into account in determining the award, as prior payment of medical bills is "not equivalent to a favorable change of position or benefits."[14] The Board limited the amount in dispute to the $2,095.58 in outstanding medical expenses.

But, in reviewing its earlier attorney's fee award, the Board considered both monetary and non-monetary factors. The non-monetary factors the Board noted were: (1) the case was complicated, and as such "a person can anticipate that the litigation costs for this case would far exceed the total amount of the monetary award"; (2) it was necessary for the Board to recognize the compensability of the lower back injury; (3) counsel charged the customary fee; (4) counsel's fee arrangement with LaRue was for 33 1/3% of the award plus costs; and (5) Claymont Steel did not lack the ability to pay the fee.[15] The Board noted that LaRue's counsel spent over thirty hours preparing for the July 2014 hearing, which lasted three hours and fifteen minutes.[16]

The Board determined:

> It would be unreasonable to limit the amount of the
> attorney's fee to only thirty percent of the value of

---

[14]    *Id.*

[15]    *Id.* at 3-4.

[16]    *Id.* at 4.

the monetary award ($617.87) without incorporating the non-monetary components of the award. After reconsidering the evidence and recognizing the monetary amount in dispute (something the Board was not able to do previously), the Board does find that an attorney's fee is excessive.[17]

The Board modified the amount of the award to $5,417.87, which it stated was a "reasonable fee and not in excess of thirty percent of the value of the award."[18]

LaRue now appeals the IAB's decision to revise its attorney's fee award. That is the only issue on appeal.

## III. STANDARD OF REVIEW

Upon its limited appellate review of the factual findings of an administrative agency, this Court must determine "whether the agency's decision is supported by substantial evidence."[19] "Substantial evidence" is defined as "'such relevant evidence as a reasonable mind might accept as

---

[17] *Id.*

[18] *Id.*

[19] *E.I. Dupont De Nemours & Co. v. Faupel*, 859 A.2d 1042, 1046 (Del. Super. Ct. 2004); *see also* DEL. CODE ANN. tit. 29, § 10142(d) ("The Court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted.").

adequate to support a conclusion."'[20]  The Court does not make its own factual findings, determine questions of credibility, or weigh evidence.[21] Rather, if the Court finds "substantial competent evidence to support the finding of the Board," its function on appeal is "to affirm the findings of the Board."[22]  And a Board's finding of fact may only be overturned when "there is no satisfactory proof in support of a factual finding of the Board."[23]

Specifically as to attorney's fees, the Court reviews the Board's determination for an abuse of discretion.  The Board does not abuse its discretion unless its decision "exceed[s] the bounds of reason in view of the circumstances."[24]

## IV.  THE PARTIES' CONTENTIONS

On appeal, LaRue argues that the Board: (1) did not properly analyze the *Cox* factors in either its original or modified award; and (2) erred in basing its award of attorney's fees on only the unpaid medical bills that were the subject of his petition.  In response, Claymont Steel contends that:

---

[20]     *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009) (quoting *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

[21]     *Id.*

[22]     *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[23]     *Id.* at 67.

[24]     *Roland v. Playtex Products, Inc.*, 2003 WL 21001022, at *1 (Del. Super. Ct. Feb. 3, 2003).

(1) LaRue judicially admitted that the Board properly considered the *Cox* factors, or that he otherwise waived that argument and therefore is precluded from claiming the Board's analysis is inadequate; (2) even if the Court finds that LaRue can forward his *Cox* argument, the Board did properly consider the *Cox* factors; and (3) that the Board properly awarded attorney's fees based only on the unpaid medical bills.

## V.    DISCUSSION

### A. LaRue can't now assert that the Board failed to properly address the *Cox* factors.

Claymont Steel argues that because LaRue previously admitted that the Board adequately analyzed the *Cox* factors in its January Decision, he is now precluded from claiming the Board did not do so.

In his response to Claymont Steel's motion for reargument, LaRue wrote that "[t]he Board decision contains the required identification and analysis of the *Cox* factors."[25]   In his conclusion, he also stated "[t]he employer's attempt to limit the fee in the amount of $617.87 bares no rational relationship to the work performed or the benefits obtained in this case when analyzing the *Cox* factors."[26]

---

[25]    *See* Appellant's Resp. to Appellee's Mot. for Reargument at 4, Ex. D to Appellee's Reply Br.

[26]    *Id.* at 5.

According to Claymont Steel, these statements are judicial admissions that now cannot be challenged. Judicial admissions are "[v]oluntary and knowing concessions of fact made by a party during judicial proceedings (e.g., statements contained in pleadings, stipulations, depositions, or testimony; responses to requests for admissions; counsel's statements to the court)."[27] They are considered conclusive and binding on the party against whom they are asserted and upon a tribunal.[28] The Board "may, however, in the exercise of its discretion, relieve a party from the conclusiveness of its judicial admissions."[29]

The Court finds that LaRue's statements in his response to Claymont Steel's motion for reargument do merit the same treatment as judicial admissions. While the Board may disregard such statements in certain circumstances, they are conclusive and binding here. Consequently, the Court accepts LaRue's admissions below as true; LaRue cannot now

---

[27]     *Merritt v. United Parcel Serv.*, 956 A.2d 1196, 1201 (Del. 2008) (citations omitted) (finding a statement from counsel in a letter admitting "temporary partial disability benefits from March 8, 2006 to the present and on-going at a rate of $75 per week" . . . "made during the administrative proceedings before the [Industrial Accident] Board, merits the same treatment as a judicial admission" binding on the court); *see also Airco Indus. Gases, Inc. Div. of the BOC Group, Inc. v. Teamsters Health & Welfare Pension Fund of Phila.*, 850 F.2d 1028, 1036 (3d Cir. 1988) (a judicial admission is "deliberately drafted by counsel for the express purpose of limiting and defining the facts in issue").

[28]     *Merritt*, 956 A.2d at 1201-02.

[29]     *Id.* at 1202

complain to this Court that the Board did not properly analyze the *Cox* factors.

**B. Even if not admitted by LaRue below, the Court finds the Board properly considered the *Cox* factors.**

In *Cox v. General Motors Corporation*, the Delaware Supreme Court set forth the factors the Board (and this Court) must consider when evaluating the appropriateness of an attorney's fee. They are:

> 1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;
>
> 2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> 3) the fees customarily charged in the locality for similar legal services;
>
> 4) the amount involved and the results obtained;
>
> 5) the time limitations imposed by the client or by the circumstances;
>
> 6) the nature and length of the professional relationship with the client;
>
> 7) the experience, reputation and ability of the lawyer or lawyers performing the services;
>
> 8) whether the fee is fixed or contingent;
>
> 9) the employer's ability to pay; and

> 10) whether fees and expenses have been received, or will be received, from any other source.[30]

LaRue claims that because the Board did not specifically address and analyze each *Cox* factor in detail, the Board did not conduct a proper fee analysis and thus abused its discretion.[31] LaRue cites *Roland v. Playtex Products, Inc.*, where this Court determined the Board's award of attorney's fees constituted an abuse of discretion when it did not carefully and specifically analyze each *Cox* factor.[32] Because the Board only "touched upon" four factors, "and then only in a summary fashion," the Court in *Roland* found it did not have enough information to analyze the issue on appeal.[33]

But in *Roland* it appears the Board never even mentioned *Cox* or the *Cox* factors—the Board briefly acknowledged: the amount of time the

---

[30]     *Cox v. Gen. Motors Corp.*, 304 A.2d 55, 57 (Del. 1973).

[31]     *See, e.g., Willis v. Plastic Materials, Co.*, 2003 WL 164292, at *2 (Del. Super. Ct. Jan. 13, 2003) (rejecting award of attorney's fees where the Board did not even mention *Cox* factors and "did not make adequate findings concerning" each of them); *Taylor v. Walton Corp.*, 2002 WL 264447, at *3-4 (Del. Super. Ct. Feb. 22, 2002) (rejecting award of attorney's fees where attorney submitted an affidavit and IAB considered *Cox* factors 1-7, but not 8-9, because the Board's discussion regarding the factors was not an adequate statement of its findings); *Woodall v. Playtex Products, Inc.*, 2002 WL 749188, at *2 (Del. Super. Ct. Apr. 26, 2002) (rejecting award of attorney's fees where the Board failed "to give adequate consideration to the *Cox* factors").

[32]     2003 WL 21001022, at *2-3 (Del. Super. Feb. 3, 2003).

[33]     *Id.*

-14-

attorney spent preparing; when the client contacted the attorney; and the length of time the attorney had been practicing.[34] Nor did the Board in *Roland* state it had considered any attorney's affidavit of attorney's fees setting forth each *Cox* factor. Not so here. The Board here cited *Cox*, obviously considered the *Cox* factors as required, and stated it had reviewed the affidavit of attorney's fees that detailed those factors.

Claymont Steel relies on the more recent *Short v. Reed Trucking Co.* There this Court noted that even when "the Board's failure to account for all of the factors is an abuse of discretion, the *Cox* factors are guidelines, not mandatory rules. Generally, the record need only show that the Board considered the *Cox* factors in reaching its decision."[35] The Court went on to state that an expression by the Board that it considered the factors is enough, as "[t]he Board, having dealt with countless fee applications, is not required to discuss its analysis on each *Cox* factor so long as the record reflects . . . that those factors were in fact considered in reaching a conclusion."[36] Thus,

---

[34]     *Id.* at *1.

[35]     2012 WL 1415595, at *2 (Del. Super. Ct. Feb. 14, 2012) (quoting *Day & Zimmerman Sec. v. Simmons*, 965 A.2d 652, 659 (Del. 2008)); *see also Lofland v. Econo Lodge*, 2009 WL 3290450, at *3 (Del. Super. Ct. Aug. 31, 2009) (citing *Simmons*) (recognizing that "the Supreme Court has recently held that the *Cox* factors are guidelines, not mandatory rules, and 'the record need only show that the Board considered the *Cox* factors in reaching its decision'").

[36]     *Id.*

-15-

in *Short*, where the Board simply listed the *Cox* factors and stated in a "conclusory fashion" it had considered them, this Court upheld the award of attorney's fees as "[i]t is not the function of the reviewing Court to substitute its evaluation for that of the Board."[37]

The Court finds *Short* applicable here. While perhaps desirable for appellate review, the Board need not isolate and analyze each *Cox* factor individually; and failure to do so in its written decision is no abuse of discretion. Here the Board did consider the *Cox* factors as set forth in LaRue's counsel's affidavit. And so there was no abuse of discretion in the Board's treatment of the *Cox* factors.

### C. The Board properly based its award of attorney's fees on only the amount of outstanding, unpaid medical bills.

Lastly, LaRue argues that the Board should have awarded him attorney's fees based on the $13,000 Claymont Steel paid (pre-Petition) for his lower back treatment. This is so, he says, because he believes the Board "reclassified" Claymont Steel's payments of prior medical bills from payments made by mistake to compensable medical bills. This, according to LaRue, constituted a "favorable change of position or benefits."

---

[37] *Id.* The Board also mentioned "that Appellant's counsel submitted that he spent 19.2 hours to prepare for the two-hour hearing; that Appellant's counsel's fee was contingent; that Appellant's counsel did not expect compensation from any other source, and that Appellee could pay an award." *Id.*

A litigant employee is entitled to attorney's fees when he obtains a favorable change of position or benefit.[38] LaRue posits he obtained three Board awards, all of which should apply in considering the amount of attorney's fees: (1) the Board established causation on substantive grounds and the alternative theory of implied agreement, (2) the Board awarded payment of all Dr. Xing's medical bills, and (3) the Board found the $13,000 in previously paid bills were causally related.[39] So LaRue asks the Court to find he is due an award of attorney's fees based on all the medical bills Claymont Steel and its carrier ever paid in relation to LaRue's back, not just the 2014 Dr. Xing payments that triggered LaRue's petition for additional compensation.

But in its January Decision, the Board made no findings about Claymont Steel's or its carrier's previous payments—it only made findings as to LaRue's back injury and Dr. Xing's 2014 bills. Specifically, the Board found that "Dr. Xing's treatment is a continuation of Claimant's low back problems triggered by the physical therapy in 2009. Dr. Xing's treatment is causally related to the work injury."[40]

---

[38]    *See Mitchell v. Perdue, Inc.*, 2009 WL 1418127, at *2 (Del. May 21, 2009).

[39]    *See* Appellant's Opening Br. at 17; Claimant's Resp. to Employer's Mot. for Reargument, Ex. 7 to Appellant's Br.

[40]    January Decision at 22.

LaRue had argued to the Board that Claymont Steel's previous payment of the low back bills created an implied agreement to accept the compensability of the low back claim. The Board never had to, nor did it, decide this issue; it had already determined that the lower back claim was causally related to the work accident. And the Board noted only that: the carrier never denied the low back bills; the carrier did not notify LaRue that the payments were made by mistake; the carrier did not seek reimbursement of those payments; the payments were never made "in dispute," and, therefore, the carrier's payments could "be construed as being made under a feeling of compulsion."[41] In concluding its discussion of LaRue's implied agreement argument, the Board wrote, "*[h]owever*, as stated above, the Board finds that substantively the low back claim is causally related to the work injury."[42] In short, there was no "reclassification" of the previous payments for previous lower back treatment.

In *Joiner v. Raytheon Constructors,* this Court determined the Board improperly awarded a claimant certain medical expenses where the employer had already paid for them.[43] Further, the Court determined the

---

[41]    *Id.* at 25.

[42]    *Id.* (emphasis added).

[43]    2001 WL 880089, at *6 (Del. Super. Ct. July 31, 2001).

claimant was not entitled to attorney's fees regarding those expenses because there was no change in benefits, stating "although Claimant benefitted by having his medical expenses already paid by Employer, Claimant has not benefitted from this Petition to Determine Compensation Due."[44] Similarly, LaRue received no favorable change or benefit here from the mere recognition of past bills the carrier already paid—the Board "awarded" him benefits on the 2014 Dr. Xing bills, not the earlier bills.

The Court will overturn the Board's award of attorney's fees only for an abuse of discretion. LaRue has not shown that the Board abused its discretion in declining to provide him with attorney's fees for the previously paid bills. LaRue has not shown that there was even an "award" for such previously paid bills. As there was no "award" for the previously paid $10,072.10 in medical bills, the Board was right to refuse a attorney's fees award for those bills. The Board properly limited its award to the true dispute and reason for LaRue's March 2014 petition—the 2014 bills totaling $2,095.

---

[44]      *Id.*

## VI. CONCLUSION

For the forgoing reasons, the decision of the Industrial Accident Board on the amount of attorney's fees Claymont Steel owes LaRue is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*
Paul R. Wallace, Judge

Original to Prothonotary
cc:    All counsel via File & Serve